## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TRISTAR RISK MANAGEMENT, a California corporation, and TRISTAR MANAGED CARE, INC., a California corporation,<br><br>                Plaintiffs,<br>v.<br><br>AMERICAN LIBERTY INSURANCE CO., INC., a Utah corporation,<br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [11] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>Case No. 2:16-cv-00476-DN<br><br>District Judge David Nuffer |

Plaintiffs Tristar Risk Management ("Risk Management") and Tristar Managed Care, Inc. ("Managed Care") (collectively "Tristar") managed claims on behalf of Defendant American Liberty Insurance Company, Inc. ("American Liberty"). Some of these claims were for services rendered by IHC Health Services, Inc. ("IHC").

Managed Care also has a separate, previous contract with IHC for claims management. An arbitrator ordered Managed Care to pay IHC damages for underpayment because IHC claims were paid by Managed Care on the rates applicable to the agreement between Risk Management and American Liberty rather than on the rates in the contract between Managed Care and IHC. Tristar wants to be reimbursed by American Liberty for the arbitration award.

Tristar's complaint ("Complaint") alleges American Liberty: (1) breached a contract; (2) breached the implied covenant of good faith and fair dealing; (3) was unjustly enriched; and (4) should, in equity, indemnify Tristar.[1] American Liberty moves for summary judgment on

---

[1] Complaint at ¶¶ 21–47, docket no. 2, filed June 3, 2016.

Tristar's claims ("Motion").[2] Tristar opposes the Motion ("Opposition").[3] American Liberty

filed a reply in support of the Motion ("Reply").[4]

There is no genuine dispute as to any material fact supporting Tristar's claims. American

Liberty is entitled to summary judgment. Therefore, American Liberty's Motion for Summary

Judgment[5] is GRANTED.

**Contents**

Background ................................................................................................................................ 2
Summar Judgment Standard ..................................................................................................... 4
Undisputed Material Facts ......................................................................................................... 5
Analysis ..................................................................................................................................... 8
    1.    American Liberty Did Not Breach the Claims Service Agreement with Risk
    Management ........................................................................................................................ 9
        A.    Managed Care is not a third party beneficiary of the Claims Service
        Agreement and cannot assert a claim of breach of contract ................... 10
        B.    Because American Liberty is a not a party to the IHC Agreement, it is not
        obligated to pay amounts purportedly owed to IHC ................................. 13
        C.    The undisputed facts do not show that American Liberty breached Article
        5.5 of the Claims Service Agreement ...................................................... 15
        D.    The undisputed facts do not show that American Liberty breached Article
        9.2 of the Claims Service Agreement ...................................................... 17
    2.    American Liberty Did Not Breach the Covenant of Good Faith and Fair Dealing
    ........................................................................................................................................ 19
    3.    American Liberty Was Not Unjustly Enriched by Managed Care ...................... 21
    4.    American Liberty is Not Required to Equitably Indemnify Managed Care ......... 23
Order .............................................................................................................................. 25

**BACKGROUND**

This case concerns two separate contracts: (1) the Intermountain Facility Services

Agreement By and Between IHC Health Services, Inc. and Tristar Managed Care ("IHC

---

[2] Defendant's Motion for Summary Judgment ("Motion"), docket no. 11, filed Aug. 15, 2016.

[3] Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition"), docket no. 20, filed Oct. 14, 2016.

[4] Defendant's Reply Memorandum in Support of Its Motion for Summary Judgment ("Reply"), docket no. 23, filed Nov. 4, 2016.

[5] Motion docket no. 11, filed Aug. 15, 2016.

Agreement");[6] and (2) the Claims Service Agreement between Risk Management[7] and American Liberty.[8]

IHC and Managed Care signed **the IHC Agreement** in June 2010.[9] The IHC Agreement allowed Managed Care to give insurance companies (and patients insured by those companies) access to IHC services if Managed Care contractually obligated the insurance companies to pay certain rates listed in the IHC Agreement ("PPO" rates).[10] Managed Care never contracted with American Liberty to provide American Liberty insureds access to the IHC facilities or to pay the rates in the IHC Agreement.

The **Claims Service Agreement** between Risk Management and American Liberty became effective in May 2011, and obligated Risk Management to perform claims handling services on American Liberty's behalf in exchange for compensation.[11] Risk Management was to use American Liberty funds to pay for claims.[12] Managed Care was not a party to this agreement but was designated in the agreement to perform functions.

While the Claims Service Agreement was in effect, American Liberty insureds received treatment at IHC facilities.[13] As outlined in the Claims Service Agreement, Risk Management forwarded the insureds' claims from IHC above $2500 (later $1500) to FairPay Solutions

---

[6] Intermountain Facility Services Agreement By and Between IHC Health Services, Inc. and Tristar Managed Care ("IHC Agreement"), Ex. B to Motion, docket no 11-2, filed Aug. 15, 2016.

[7] Claims Service Agreement-Workers Compensation ("Claims Service Agreement"), Ex. A to Motion, docket no. 11-1, filed Aug. 15, 2016. The Claims Service Agreement mentions Tristar Managed Care, but it is not a party to the agreement. *See infra* Undisputed Fact ¶ 7.

[8] Claims Service Agreement at 1.

[9] IHC Agreement at 1.

[10] *Id.* at 5, ¶ II.B.1, 7, ¶ II.F, 8, ¶ II.H, & 11, ¶¶ III.A, III.B.

[11] Claims Service Agreement at 1, ¶ 1.1, 3, ¶ 3.1, & 10, ¶ 10.1.

[12] *Id.* at 6, ¶ 5.1.

[13] Declaration of Thomas J. Veale ("Veale Declaration") ¶ 4, Ex. A to Opposition, docket no. 20-1, filed Oct. 14, 2016.

("FairPay") and the rest of the claims to Managed Care.[14] After FairPay adjusted the claims over $2500 (later $1500), it would tell Managed Care the amount it should pay to IHC in accordance with FairPay's schedule, not according to the rates in the IHC Agreement.[15] Managed Care would then "cut a check" to IHC.[16] For the other claims, below $2500 (later $1500), Managed Care not only made the check to IHC but also adjusted the claim.[17]

Because IHC believed it was being underpaid for American Liberty claims that were adjusted by FairPay, IHC filed an arbitration action against Managed Care for breach of the IHC Agreement.[18] The arbitrator agreed with IHC and entered an award in IHC's favor.[19] The award requires Managed Care to pay IHC the difference between the claims as adjusted by FairPay (established under the Claims Service Agreement) and the claims as billed by IHC, applying the PPO reduction allowed in the IHC Agreement between Managed Care and IHC.[20] Because the IHC Agreement PPO rates are higher than the payments authorized by FairPay, IHC was awarded the difference.[21] Now, Tristar is seeking to recover the arbitration award from American Liberty.

## SUMMARY JUDGMENT STANDARD

American Liberty is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law."[22] A dispute

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] Demand for Arbitration, Ex. E to Motion, docket no. 11-5, filed Aug. 15, 2016.

[19] Veale Declaration ¶ 4.

[20] *Id.*

[21] *Id.* ¶ 5.

[22] Fed. R. Civ. P. 56(a).

about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for [Tristar]."[23] American Liberty satisfies its "initial burden of demonstrating an absence of a genuine issue of material fact" when it "indicat[es] to the court a lack of evidence for [Tristar] on an essential element of [Tristar's] claim."[24] "Once [American Liberty] has done so, 'the burden shifts to [Tristar] to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial.'"[25] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to [Tristar]."[26]

## UNDISPUTED MATERIAL FACTS[27]

1.      On June 1, 2010, IHC and Managed Care entered into the IHC Agreement.[28]

2.      The IHC Agreement contained a payment schedule.[29]

3.      American Liberty is not a party to the IHC Agreement.[30]

4.      In May 2011, American Liberty and Risk Management entered into the Claims Service Agreement [dealing with workers compensation claims].[31]

---

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[24] *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (quoting *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002)).

[25] *Id.* (quoting *Sally Beauty Co.*, 304 F.3d at 971).

[26] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[27] These facts are drawn from the Motion, Opposition, and Reply. Only one fact, asserted by Tristar, is not included in this section because it is an impermissible conclusion: "As a result of [American Liberty] requiring Risk Management to follow FairPay's instructions and facilitate the of making reduced payments to IHC, any payments Risk Management is required to make under the arbitration award would necessarily be payments on [American Liberty] claims out of Risk Management funds." Opposition at 4, ¶ 9.

[28] Motion at v, ¶ 1 (citing IHC Agreement). Undisputed by Tristar. Opposition at 3.

[29] Motion at v, ¶ 2 (citing Intermountain Facilities and Payment Schedule, Attach. A to IHC Agreement, docket no. 11-2, filed Aug. 15, 2016). Undisputed by Tristar. Opposition at 3.

[30] Motion at vi, ¶ 9 (citing IHC Agreement). Undisputed by Tristar. Opposition at 3.

[31] Motion at v, ¶ 3 (citing Claims Service Agreement). Undisputed by Tristar. Opposition at 3. Tristar asserts this same fact, which is undisputed by American Liberty. Opposition at 3, ¶ 1.

5.      Prior to entering into the Claims Service Agreement, American Liberty received from Risk Management a proposal concerning workers' compensation claims services ("Proposal").[32]

6.      The Proposal contains five pages that discuss services to be provided by Managed Care.[33]

7.      Managed Care is not a party to the Claims Service Agreement.[34]

8.      The Claims Service Agreement does not refer to the IHC Agreement.[35]

9.      The Claims Service Agreement does not contain the payment schedule found in Attachment A of the IHC Agreement.[36]

10.     The Claims Service Agreement mentions Managed Care only once. Exhibit A to the Agreement states: "Pricing assumes TRISTAR Managed Care will direct all managed care as mutually agreed upon and as outlined in the Client Service Instructions."[37]

11.     The Client Service Instructions list the services being provided to American Liberty as "Workers' Compensation Third Party Claims Administration and TRISTAR Managed Care Services."[38]

---

[32] Opposition at 3, ¶ 2 (citing Proposal for Workers' Compensation Claim Services ("Proposal") ¶ 3, Ex. 1 to Ex. A of Opposition, docket no. 20-1, filed Oct. 14, 2016). Undisputed by American Liberty. Responses to Statement of Undisputed Additional Facts ("Responses") at 1, ¶ 2, Ex. B to Reply, docket no. 23-2, filed Nov. 4, 2016.

[33] Opposition at 3, ¶ 3 (citing Proposal at 12–17). Undisputed by American Liberty. Responses at 1, ¶ 3.

[34] Motion at vi, ¶ 10 (citing Claims Service Agreement). Undisputed by Tristar. Opposition at 3.

[35] Motion at v, ¶ 4 (citing Claims Service Agreement). Undisputed by Tristar. Opposition at 3.

[36] Motion at v, ¶ 5 (citing Claims Service Agreement). Undisputed by Tristar. Opposition at 3.

[37] Motion at vi, ¶ 11 (citing Claims Service Agreement at 16). Undisputed by Tristar. Opposition at 3.

[38] Opposition at 3, ¶ 4 (citing Client Service Instructions, Ex. C to Motion, docket no. 11-3, filed Aug. 15, 2016). Undisputed by American Liberty. Responses at 1, ¶ 4.

12.     Under the Claims Service Agreement, FairPay—not Risk Management—would adjust medical bills above a threshold amount.[39]

13.     At all times when the Claims Service Agreement was in effect, Risk Management received American Liberty claims from IHC. Risk Management would forward any claims greater than $2500 (later greater than $1500) to FairPay for handling. Remaining claims were forwarded to Managed Care for review. For claims sent to Managed Care for review, Managed Care would cut checks on behalf of American Liberty to IHC that applied the PPO discount negotiated by Managed Care with a notation on the check that the Managed Care PPO rate was being applied. For claims sent to FairPay for handling, FairPay would review the claims and then instruct Managed Care the amount to pay on the claim. Managed Care would then "cut a check" on behalf of American Liberty to IHC in the amount instructed by FairPay and with a notation that the FairPay PPO rate was being applied.[40]

14.     American Liberty would not have received a PPO rate reduction from IHC on claims handled by Risk Management and Managed Care but for the agreement Managed Care had with IHC.[41]

15.     The Claims Service Agreement provides that "at no time will [Risk Management] be obligated to make any payments of Claims and Allocated Loss Adjustment Expenses out of [Risk Management] funds."[42]

---

[39] Motion at v, ¶ 7 (citing Claims Service Agreement at 17; Client Service Instructions; Complaint ¶¶ 8–9). Undisputed by Tristar. Opposition at 3.

[40] Opposition at 4, ¶ 5 (citing Veale Declaration ¶ 4). Undisputed by American Liberty. Responses at 1-2, ¶ 5.

[41] Opposition at 5, ¶ 10 (citing Veale Declaration ¶ 8). Undisputed by American Liberty. Responses at 3, ¶ 10.

[42] Opposition at 4, ¶ 6 (citing Claims Service Agreement ¶ 5.5). Undisputed by American Liberty. Responses at 2, ¶ 6.

16.     The Claims Service Agreement does not obligate American Liberty to pay any particular rate for IHC services.[43]

17.     Tristar never alleges that American Liberty entered into a contract with Managed Care that requires American Liberty to pay any particular rate for IHC services.[44]

18.     An arbitrator has entered an award against Managed Care requiring Managed Care to pay the difference between American Liberty's claims as adjusted by FairPay and American Liberty's claims as billed by IHC, applying the PPO reduction allowed in the agreement between Managed Care and IHC.[45]

19.     Managed Care does not allege that it has made any payments to IHC.[46]

20.     Managed Care is now seeking to recover from Risk Management the amount awarded by the arbitrator.[47]

## ANALYSIS

American Liberty seeks summary judgment on all of Tristar's claims.[48] The claims are: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; and (4) equitable indemnification.[49] Each claim will be discussed below. As the following explains in detail, American Liberty's Motion is GRANTED on all claims.

---

[43] Motion at v, ¶ 6 (citing Claims Service Agreement). Undisputed by Tristar. Opposition at 3.

[44] Motion at v, ¶ 8. Undisputed by Tristar. Opposition at 3.

[45] Opposition at 4, ¶ 7 (citing Veale Declaration ¶ 5). Undisputed by American Liberty. Responses at 2, ¶ 7.

[46] Motion at vii, ¶ 12 (citing Complaint). Although Tristar says that this fact is disputed by its seventh additional fact, this is not the case. Tristar's seventh additional fact explains that an arbitration award has been entered against Managed Care. Opposition at 4, ¶ 7 (citing Veale Declaration). On the other hand, this fact speaks to whether Managed Care has made payments on the arbitration award entered against it. American Liberty does not dispute Tristar's seventh additional fact. Responses at 2, ¶ 7.

[47] Opposition at 4, ¶ 8 (citing Veale Declaration ¶ 6). Undisputed by American Liberty. Responses at 2-3, ¶ 8.

[48] Motion at i.

[49] Complaint at ¶¶ 21–47.

### 1. American Liberty Did Not Breach The Claims Service Agreement With Risk Management.

Tristar asserts that the Claims Service Agreement is a "binding and enforceable agreement" between American Liberty and Risk Management and that Managed Care is a third party beneficiary of that agreement.[50] Tristar then alleges American Liberty materially breached the Claims Service Agreement by:[51] 1) "[r]efusing to respond to [Risk Management] and [Managed Care's] requests that [American Liberty] pay amounts owed to IHC under the IHC Agreement;"[52] 2)" allowing [Risk Management] to be placed in a situation where [Risk Management] is required to pay claim-related costs out of its own funds;"[53] and 3) "failing to indemnify and hold harmless [Risk Management] and [Managed Care] for [American Liberty]'s negligence and willful misconduct.[54]" Neither party disputes that the Claims Service Agreement is a binding agreement between American Liberty and Risk Management.[55] Their dispute focuses on whether American Liberty breached its obligations under Claims Service Agreement.

In Utah, "[a] breach of express contract claim arises out of the express terms of the contract, and the breach [must be] proven in relation to those terms."[56] "When interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions,

---

[50] Complaint at ¶ 24.

[51] The Complaint refers to Risk Management as "TRM," Managed Care as "TMC," and American Liberty as "ALIC." For consistency and uniformity, quotations to the Complaint throughout this decision have been altered to reflect the party names indicated at decision's outset.

[52] *Id.*

[53] *Id.*

[54] Complaint at ¶ 24.

[55] Undisputed Fact ¶ 1.

[56] *Global. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1176, 1187 (D. Utah 2015) (quoting *Christiansen v. Farmers Ins. Exch.*, 116 P.3d 259, 261 (Utah 2005)).

which are controlling."[57] "If the language within the four corners of the contract is unambiguous . . . a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law."[58]  In the following discussion, Managed Care's purported status as a third party beneficiary of the Claims Service Agreement will be addressed first, followed by the individual allegations that American Liberty acted in a way that breached the Claims Service Agreement.

### A. Managed Care is not a third party beneficiary of the Claims Service Agreement and cannot assert a claim of breach of contract.

Because the Complaint contains both contractual and quasi-contractual causes of action, Managed Care's status as a third party beneficiary of the Claims Service Agreement must be resolved to determine if Managed Care may appropriately make claims against American Liberty. American Liberty's Motion argues that Managed Care is not a third party beneficiary of the Claims Service Agreement and has no right assert a breach of contract claim.[59] Tristar offers no response.[60]

Under Utah law, "[t]he benefits conferred by contracts are presumed to flow exclusively to the parties who sign the contracts."[61] "[A] third party has standing to sue if it is an *intended*, and not merely an *incidental*, beneficiary."[62] "[T]hird party beneficiary status is determined by

---

[57] *Fairbourn Comm., Inc. v. Am. Hous. Partners, Inc.*, 94 P.3d 292, 295 (Utah 2004) (quoting *Bakowski v. Mountain States Steel, Inc.*, 52 P.3d 1179, 1184 (Utah 2002)).

[58] *Id.*

[59] Motion at 2.

[60] Tristar bypasses American Liberty's argument on this point entirely. Instead, it focuses its argument in the Opposition on American Liberty's alleged breaches of Article 5.5 and Article 9.2. *See* Opposition at 6–9. American Liberty acknowledges the omission. Reply at 2.

[61] *Bybee v. Abdulla*, 189 P.3d 40, 49 (Utah 2008).

[62] *Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 355 P.3d 965, 972 (Utah 2015) (emphasis in original).

the examining a written contract."[63] That written contract "must show that the contracting parties clearly intended to confer a separate and distinct benefit upon the third party."[64] "Indeed, it is not enough that the parties to the contract know, expect or even intend that others will benefit from the contract."[65] "[T]he contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear."[66] Only when there is clear intent in the contract "to confer rights upon a third party" is that party able to "enforce rights and obligations of the contract."[67] Absent this clear intent, "a third party who benefits only incidentally from the performance of a contract has no right to recover under that contract."[68]

It is undisputed that Managed Care is not a party to the Claims Service Agreement[69] and also that American Liberty is not a party to the IHC agreement.[70] The Claims Service Agreement does not incorporate or reference the Payment Schedule (with its PPO rate provision) attached as Exhibit A to the IHC agreement.[71] The Claims Service Agreement does not obligate American Liberty to pay any particular rate for IHC services.[72] The Claims Service Agreement mentions Managed Care only once in an exhibit: "Pricing assumes TRISTAR Managed Care will direct all managed care as mutually agreed upon and as outlined in the Client Service Instructions."[73] The portion of the separate unsigned Client Service Instructions referring to Managed Care describes

---

[63] *Wagner v. Clifton*, 62 P.3d 440, 442 (Utah 2002) (internal citation and quotation omitted).

[64] *Lilley v. JP Morgan Chase*, 317 P.3d 470, 472 (Utah Ct. App. 2013) (quoting *Wagner*, 62 P.3d at 442).

[65] *Id.* (quoting *SME Indus., Inc. v. Thompson, Ventullet, Stainback & Assocs.,* 28 P.3d 669, 684 (Utah 2001)).

[66] *Id.*

[67] *Id.* (quoting *Wagner*, 62 P.3d at 440).

[68] *Id.* (internal quotation and citation omitted).

[69] Undisputed Fact ¶ 7.

[70] Undisputed Fact ¶ 3.

[71] Undisputed Fact ¶ 9.

[72] Undisputed Fact ¶ 16.

[73] Undisputed Fact ¶ 10.

its services as "Workers' Compensation Third Party Claims Administration and TRISTAR Managed Care Services."[74]

On the undisputed facts, Managed Care is only an incidental beneficiary of the agreement between Risk Management and American Liberty. Although the references to Managed Care in the Claims Service Agreement certainly might have caused American Liberty and Risk Management to know or expect Managed Care would benefit from the contract, these references do not make it affirmatively clear that the Claims Service Agreement was undertaken for Managed Care's *direct* benefit. In particular, without any reference in the Claims Service Agreement to the IHC Agreement or to the fact that Managed Care would be providing client services under the Claims Service Agreement subject to its contractual obligations to IHC, nothing in the Claims Service Agreement enables Managed Care to make a claim against American Liberty under the IHC Agreement.[75]

At most, the single reference to Managed Care in the Claims Service Agreement and the single reference in the Client Service Instructions demonstrate that Managed Care, as a nonparty to the Claims Service Agreement, incidentally benefits from the agreement as it one of two designated entities that was to provide claims handling services.[76] Because Managed Care is not an intended third party beneficiary that may assert rights under the Claims Service Agreement, Managed Care may not obtain reimbursement for the arbitration award through the breach of contract claim or the associated breach of the implied covenant of good faith and fair dealing claim.

---

[74] Undisputed Fact ¶ 11.

[75] *See Supra* notes 82–85 and accompanying discussion in the text.

[76] Risk Management would forward any claims greater than $2500 (later greater than $1500) to FairPay for handling. Remaining claims were forwarded to Managed Care for review. *See* Undisputed Fact ¶ 13.

**B. Because American Liberty is a not a party to the IHC Agreement, it is not obligated to pay amounts purportedly owed to IHC.**

Risk Management's first allegation of contractual breach is that American Liberty materially breached the Claims Service Agreement by "refusing to respond to Risk Management and Managed Care's requests that American Liberty pay amounts owed to IHC under the IHC Agreement."[77] American Liberty argues that no language in the Claims Service Agreement "requires American Liberty to pay the rates listed in the IHC Agreement[,]"[78] nor is there any "separate contract with American Liberty that requires American Liberty to pay the rates contained in the IHC Agreement."[79]

American Liberty's arguments are supported by the undisputed facts. As outlined earlier, the Claims Service Agreement does not obligate American Liberty to pay any particular rate for IHC services.[80] American Liberty is not a party to the IHC agreement which obligates Managed Care to arrange payment at the PPO rates,[81] and the Complaint does not allege that American Liberty entered into a contract with Managed Care that requires American Liberty to pay the PPO rate for IHC services.[82] No enforceable language in the Claims Service Agreement binds American Liberty to pay the rates specified in the IHC agreement.

Tristar, through Managed Care, could have executed such an instrument with American Liberty. In fact, the express language of the IHC Agreement mandates that Managed Care do so. By the IHC Agreement, Managed Care is obligated to "obtain and maintain … a valid

---

[77] Complaint at ¶ 24(a).

[78] Motion at 3.

[79] *Id.*

[80] Undisputed Fact ¶ 16.

[81] Undisputed Fact ¶ 3.

[82] Undisputed Fact ¶ 17.

enforceable agreement with each Purchaser that obligates such Purchaser to comply with the applicable terms and condition of this agreement."[83] "Purchaser" is defined in the IHC Agreement as "an employer group which pays a premium or service fee, or whose funds are used to pay health care providers for Covered Services under the Worker's Compensation Medical Benefits."[84] Later in the IHC Agreement, Managed Care indicated that it "understands and agrees that it is responsible, and [Managed Care] will obligate Purchasers under agreement with [Managed Care] to be responsible for claims administration and for all payments to [IHC] Facilities, for all Covered Services rendered to Employees under this Agreement."[85] Managed Care also agreed "that payments for Covered Services to [IHC] Facilities will be made in accordance with the payment schedules in Attachment A, 'INTERMOUNTAIN Facilities and Payment Schedule' . . . ."[86]

Managed Care was clearly obligated to enter into agreements with insurance providers to abide by the terms of the IHC Agreement when the providers' policy holders received treatment at IHC facilities and the providers paid for that treatment. Yet Plaintiffs do not allege that American Liberty entered into a contract with Managed Care that required American Liberty to pay any particular rate for IHC services.[87] In the absence of such a separate agreement—that Managed Care was required by the IHC Agreement to obtain—or the inclusion of language in

---

[83] IHC Agreement at 5, ¶ II.B.1.

[84] *Id.* at 3, ¶ I.K.

[85] *Id.* at 7, ¶ II.F. The term "employer group" is not specifically defined in the IHC Agreement, but the "Purchaser" definition suggests that it can mean either the employer or the insurer. This is because "[t]he parties to the contract of workers' compensation and employer's liability insurance are the employer and the insurer." 9A Steven Plitt, Daniel Maldonado, Joshua D. Rogers, and Jordan R. Plitt, Couch on Insurance § 133:25 (3d ed. 1999). The "Purchaser" definition accounts for both of these parties: the employer who pays "a premium or service fee" to cover its employees and the insurer "whose funds are used to pay health care providers." IHC Agreement at 7, ¶ II.F

[86] *Id.*

[87] Undisputed Facts ¶ 17.

the Claims Service Agreement reflecting Managed Care's obligations to IHC, American Liberty is not bound by the terms of the IHC Agreement. Therefore American Liberty's refusal of Tristar's request to pay amounts that Tristar claims are owed to IHC is not a breach of the Claims Service Agreement.

## C. American Liberty did not breach Article 5.5 of the Claims Service Agreement.

Risk Management's next allegation of contractual breach is that American Liberty materially breached the Claims Service Agreement because it "[a]llow[ed] [Risk Management] to be placed in a situation where [Risk Management] [was] required to pay claim related costs out of its funds."[88] Tristar clarifies in the Opposition that this conduct breached Article 5.5 of the Claims Service Agreement, in which "American Liberty acknowledges that at no time will [Risk Management] be obligated to make any payments of Claims and Allocated Loss Adjustment Expenses out of [Risk Management] funds."[89] Risk Management treats the arbitration award against Managed Care as a claims payment that is "now be[ing] put upon Risk Management."[90] American Liberty argues that it did not breach this provision because Tristar did not allege that American Liberty "asked Risk Management to use its funds to make claim payments to IHC"[91] or that "Risk Management is obligated to make claims payments out of its funds."[92]

As noted at the outset of this section, "[a] breach of express contract claim arises out of the express terms of the contract, and the breach [must be] proven in relation to those terms."[93] The express language contained in other subsections within Article 5 provide additional context

---

[88] Complaint at ¶ 24(b).

[89] Opposition at 7 (citing Claims Service Agreement at 7, ¶ 5.5).

[90] *Id.*

[91] Motion at 3.

[92] *Id.* at 4.

[93] *Global Fitness*, 127 F. Supp. 3d 1187.

for the acknowledgement in Article 5.5. Article 5.4 provides that "[Risk Management][94] shall make payment of claims and Allocated Loss Adjustment Expenses from a claims payment account funded by American Liberty . . . ."[95] Article 5.1 describes how the claims payment account is funded and the purpose of the account itself:

> [Risk Management] shall have the authority to draw upon a bank account which shall be established and funded by American Liberty for the purpose of making payments on claim files. It is the responsibility of American Liberty to have sufficient funding available in the account to allow [Risk Management] to be able to make all payments in a timely manner and as required by law.[96]

Under the express terms of the Claims Service Agreement, American Liberty was obligated to supply sufficient funding for a claims payment account that Risk Management would draw from as it made timely payments on the claims it handled. American Liberty would breach that obligation if it failed to provide sufficient funding to the claims payment account and caused Risk Management to pay for the claims it handled out of its own funds. Notably, Tristar does not allege or offer evidence that the claims payment account was insufficiently funded. Instead, Plaintiffs seek to contort this section of the Claims Service Agreement into a requirement that American Liberty pay for Managed Care's failure to adhere to its obligations to IHC. But Managed Care is not a party to, or intended beneficiary of, the Claims Service Agreement. The allegation that American Liberty breached Article 5.5 has no evidentiary support.

---

[94] "TRISTAR" appears in the original, but the Claims Service Agreement specifies that "TRISTAR" refers to "TRISTAR Risk Management." Claims Service Agreement at 1. To avoid confusion, quotations to articles of the Claims Service Agreement have been altered to reflect the appropriate plaintiff, in this case, Risk Management.

[95] Claims Service Agreement at 7, ¶ 5.4.

[96] *Id.* at 6, ¶ 5.1.

**D. American Liberty did not breach Article 9.2 of the Claims Service Agreement.**

Risk Management's other allegation of breach of contract is that American Liberty breached the Claims Service Agreement by "[f]ailing to indemnify and hold harmless [Risk Management] and [Managed Care] for American Liberty's negligence and willful misconduct."[97] The requirement for American Liberty to indemnify and hold harmless Risk Management and its agents is found in Article 9.2 of the Claims Service Agreement:

> American Liberty agrees to defend and hold harmless [Risk Management], their officers, agents and employees, from and against any and all liability, loss, damage or expense, including extra contractual and punitive damages and attorney's fees, incurred in connection with claims or demands for damages arising out of the services provided under this Agreement, when such claims or demands arise from or are caused by the sole negligence or willful misconduct of American Liberty.[98]

**Managed Care was Risk Management's agent**. Risk Management argues that, by providing services under the Claims Service Agreement, Managed Care was acting on behalf of Risk Management as Risk Management's agent and thus entitled to indemnity. Risk Management argues that American Liberty's underpayment of IHC claims was negligent and willful and was the direct cause of the damages incurred through the arbitration award.[99]For Managed Care to be an agent of Risk Management for potential indemnification under Article 9.2, "three elements must exist: (1) the principal must manifest its intent that the agent act on its behalf, (2) the agent must consent to so act, and (3) both parties must understand that the agent is subject to the principal's control."[100] An exhibit to the Claims Service Agreement between American Liberty and Risk Management states that the pricing of fees or cost of services

---

[97] Complaint at ¶ 24(c).

[98] Claims Service Agreement at 9, ¶ 9.2.

[99] Opposition at 8–9.

[100] *Sutton v. Miles*, 333 P.3d 1279, 1282 (Utah Ct. App. 2014).

"assumes TRISTAR Managed Care will direct all managed care as mutually agreed upon and as outlined in the Client Service Instructions."[101] The separate unsigned Client Service Instructions show that the provided services included "TRISTAR Managed Care Services." When Risk Management received American Liberty Claims from IHC, it would forward claims less than $2500 (later $1500) to Managed Care for handling.[102] These facts satisfy the elements of an agency relationship: (1) Risk Management manifested its intent that Managed Care act on its behalf; (2) Managed Care consented to do so; and (3) both Risk Management and Managed Care understood that Managed Care was subject to Risk Management's control.

**American Liberty did not engage in conduct entitling Risk Management to indemnity.** Although Managed Care is an agent of Risk Management,[103] the undisputed facts do not show that American Liberty engaged conduct that requires it to indemnify Risk Management under Article 9.2. American Liberty argues that the arbitration award was not a result of American Liberty's sole negligence or willful misconduct, but that Managed Care's own conduct breached the IHC agreement.[104]

Even if the undisputed facts were to support the conclusion that American Liberty was somehow negligent, it was not *solely* negligent as is required to trigger indemnification under Article 9.2. As previously explained, Managed Care was obligated to arrange for and enforce agreements between Managed Care and insurance providers, requiring those providers to abide

---

[101] Undisputed Facts ¶ 7.

[102] Undisputed Facts ¶ 10.

[103] Recognizing Managed Care as an agent has no bearing on the previous determination that Managed Care is not an intended third party beneficiary. The Supreme Court of Utah has held that "run-of-the-mill indemnity and hold harmless provisions . . . are insufficient to show an intent to benefit nonparties to the contract and, therefore, do not give rise to third-party beneficiary rights." *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1387 (Utah 1989) (internal citations omitted).

[104] Motion at 4.

by the terms of IHC Agreement's payment schedule and specified rates.[105] Tristar never has alleged that American Liberty entered into a contract with Managed Care that required American Liberty to pay any particular rate for IHC services.[106] American Liberty paid the rates required under the Claims Service Agreement and was not negligent. Managed Care neglected its duties under the IHC Agreement. Risk Management's claim for indemnity under Article 9.2 fails as a matter of law.

### 2. American Liberty Did Not Breach The Covenant Of Good Faith And Fair Dealing

Tristar also claims that American Liberty's unreasonable conduct—acting in a matter that deprived Risk Management and Managed Care of the fruits of the Claims Service Agreement—constitutes a breach of the covenant of good faith and fair dealing that is implied in the Claims Service Agreement.[107] Because Risk Management is the only plaintiff with the ability to assert rights under the Claims Service Agreement,[108] the analysis of this claim will focus only on the contractual relationship between Risk Management and American Liberty.

American Liberty argues that it is only obligated under the Client Services Agreement to compensate Risk Management for providing claims handling services and that it complied with that obligation.[109] Risk Management, according to American Liberty, is attempting to read into the Claims Service Agreement a new, independent covenant that would require American Liberty to pay the amount that Managed Care owes IHC under the IHC Agreement. Risk Management argues this obligation already exists in Article 5.5 of the Claims Service Agreement

---

[105] *See infra* notes 82–85 and accompanying discussion in the text.

[106] Undisputed Facts ¶ 17.

[107] Complaint at ¶¶ 30–31.

[108] *Infra* at 12.

[109] Motion at 5.

and that "[t]he justified expectation of Risk Management (and its agents) was that it would provide claim handling services, including a PPO discount, and would never be obligated to pay any of [American Liberty]'s claims out of its own funds. . . ."[110]

Utah law recognizes only a "limited role for the covenant of good faith and fair dealing"[111] and has set a "high bar for the invocation of a new covenant."[112] The benefit of "inferring as a term of every contract a duty to perform in the good faith manner that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute"[113] cannot justify the "judicial inference of contract terms"[114] that would "threaten[] 'commercial certainty and breed[] costly litigation.'"[115] "[T]his covenant cannot be read to establish new, independent rights or duties to which the parties did not agree ex ante."[116] In short, "[t]he reach of the implied covenant of good faith and fair dealing extends no further than the purposes and express terms of the contract."[117]

As specified earlier, the express language of Article 5 imposes the obligation on American Liberty to create a claims payment account and to ensure that the account is sufficiently funded.[118] Article 5.5 enforces this obligation through the acknowledgement that "at no time will [Risk Management] be obligated to make any claims payment out of [Risk

---

[110] Opposition at 9.

[111] *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 816 (Utah 2011).

[112] *Id.* at 817.

[113] *Id.* at 816.

[114] *Id.*

[115] *Id.* (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990)).

[116] *Oakwood Vill. LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1240 (Utah 2004).

[117] *Smith v. Grand Canyon Expeditions Co.*, 84 P.3d 1154, 1160 (Utah 2003) (internal citation omitted).

[118] See infra notes 94–95 and accompanying text.

Management] funds.[119] The Complaint does not allege that American Liberty failed to maintain sufficient funding in the account. The Claims Service Agreement does not obligate American Liberty to pay any particular rate for IHC services,[120] and Tristar has never alleged that American Liberty entered into a contract with Managed Care that required American Liberty to pay any particular rate for IHC services.[121]

Risk Management seeks to improperly invoke the covenant of good faith and fair dealing to establish a new, independent right or duty that is not included the Claims Service Agreement. Risk Management's breach of the covenant of good faith and fair dealing claim fails.

### 3. American Liberty Was Not Unjustly Enriched By Managed Care

American Liberty's Motion also seeks summary judgment on Tristar's two quasi-contractual claims for relief.[122] The first of these two claims is an unjust enrichment claim.[123] Tristar alleges that "[American Liberty] has been or will be unjustly enriched at the expense of [Risk Management] and [Managed Care] as a result of its conduct[,]"[124] and that "[Risk Management] and [Managed Care] are entitled to recover those amounts by which [American Liberty] has been unjustly enriched."[125] American Liberty argues that Risk Management cannot make this claim because Risk Management has a contract with American Liberty.[126] This is correct. In Utah, "a claim of unjust enrichment cannot arise where there is an express contract

---

[119] Claims Service Agreement at 7, ¶ 5.5.

[120] Undisputed Facts ¶ 16.

[121] *Id.* ¶ 17.

[122] Motion at 10–12.

[123] Complaint at ¶¶ 33–38.

[124] *Id.* at ¶ 34.

[125] *Id.* at ¶ 348.

[126] Motion at 6.

governing the subject matter of a dispute."[127] Only Managed Care, as a nonparty to (and incidental beneficiary of) the Claims Service Agreement, may seek a quasi-contractual claim here.

American Liberty also argues that Managed Care's unjust enrichment claim fails because Managed Care has not conferred a benefit on American Liberty. Managed Care responds that it did "bestow[] a benefit on [American Liberty] when an arbitration award was issued against Managed Care requiring it to pay [American Liberty]'s underpayment on IHC claims."[128]

In order to "prevail on an unjust enrichment theory" a plaintiff must prove three elements: "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[129] Even if American Liberty benefitted because it received a PPO rate reduction from IHC on claims handled by Risk Management and Managed Care because of the agreement Managed Care had with IHC,[130] American Liberty did not know about or appreciate that benefit. American Liberty is not a party to the IHC Agreement.[131] The Claims Service Agreement between Risk Management and American Liberty does not refer to the IHC Agreement.[132] The Claims Service Agreement does not contain the payment schedule found in Attachment A of the IHC Agreement.[133] The Proposal provided to American Liberty in advance

---

[127] *U.S. Fidelity v. U.S. Sports Specialty*, 270 P.3d 464, 468 (Utah 2012).

[128] Opposition at 10.

[129] *Jeffs v. Stubbs*, 970 P.2d 1234, 1247–48 (Utah 1998) (internal quotation and citation omitted).

[130] Undisputed Facts ¶ 14.

[131] *Id.* ¶ 3.

[132] *Id.* ¶ 8.

[133] *Id.* ¶ 9.

of entering into the Claims Service Agreement contains general language regarding Managed Care PPO network partners, but does not refer to the IHC Agreement, IHC services or the specified terms or rates of the IHC Agreement.[134] And American Liberty was never billed at those rates. American Liberty did not have the requisite knowledge to appreciate any benefit it might receive through Managed Care's handling of American Liberty Claims. Managed Care's unjust enrichment claim fails.

### 4. American Liberty Is Not Required To Equitably Indemnify Managed Care.

Tristar's fourth claim for relief in the Complaint is for equitable indemnification.[135] Tristar asserts that "[i]t would be inequitable for [Risk Management] and/or [Managed Care] to compensate IHC for [American Liberty]'s alleged underpayments[,]"[136] and that "any obligation for alleged underpayments to IHC and the costs of defending against IHC's allegations should be paid by American Liberty."[137] However, because "the law will not imply an equitable remedy when there is an adequate remedy at law[,]"[138] Risk Management is precluded from taking part in the equitable indemnity claim just as it was in the unjust enrichment claim.

American Liberty argues that summary judgment against Managed Care is appropriate because American Liberty "does not owe IHC any money under the IHC Agreement."[139] "IHC's arbitration demand is based on Managed Care's failure to require that American Liberty pay the rates stated in the IHC Agreement."[140] "That breach results from Managed Care's conduct, not

---

[134] *See* Proposal at 2, 12–16.

[135] Complaint at ¶¶ 39–47.

[136] *Id.* at ¶ 45.

[137] *Id.* at ¶ 46.

[138] *Thorpe v. Washington City*, 243 P.3d 500, 507 (Utah Ct. App. 2010) (internal quotation and citation omitted).

[139] Motion at 9.

[140] Reply at 9.

American Liberty's conduct."[141] Managed Care responds that "Managed Care has discharged an obligation to IHC, as evidenced by the arbitration award against Managed Care[,]" and that "[American Liberty] was obligated to pay something more to IHC than it paid."[142] According to Managed Care, "[b]y [American Liberty]'s logic, it was not required to pay IHC anything."[143]

American Liberty is correct. American Liberty is not required—or obligated—to pay IHC anything either under the Claims Service Agreement or the IHC Agreement. The absence of any obligation running from American Liberty to IHC is fatal to Managed Care's claim of equitable indemnity.

An equitable indemnity claim consists of three elements. "First, the prospective indemnitee must discharge a legal obligation owed to a third party."[144] "Second, the prospective indemnitor must also be liable to the third party."[145] "Third, as between the prospective indemnitor and the prospective indemnitee, the obligation should be paid by the indemnitor."[146] These principles do not fit these facts. Managed Care is liable to IHC. IHC and Managed Care entered into the IHC agreement.[147] American Liberty is not a party to the IHC agreement.[148] The Claims Service Agreement between American Liberty and Risk Management[149] does not refer to the IHC Agreement[150] and does not contain the payment schedule found in the IHC

---

[141] *Id.*

[142] Opposition at 11.

[143] *Id.*

[144] *Salt Lake City Sch. Dist. v. Galbraith & Green, Inc.*, 740 P.2d 284, 287 (Utah Ct. App. 1987) (citing *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984).

[145] *Id.*

[146] *Id.*

[147] Undisputed Facts ¶ 1.

[148] *Id.* ¶ 3.

[149] *Id.* ¶ 4.

[150] *Id.* ¶ 8.

Agreement.[151] Managed Care was clearly obligated to arrange for and enforce agreements with insurance providers requiring them to abide by the terms of the IHC Agreement, including paying the rates specified in the payment schedule.[152] If Managed Care had done so, it would have formed the relationship that would support a claim of equitable indemnification. But as American Liberty points out, Managed Care breached the IHC Agreement when it failed to ensure that American Liberty was contractually obligated to comply with the terms of the IHC Agreement. Managed Care, because of this breach, cannot seek equitable indemnification against American Liberty and is itself responsible for the resulting arbitration award.

## ORDER

IT IS HEREBY ORDERED that American Liberty's Motion for Summary Judgment[153] is GRANTED. Plaintiffs' Complaint[154] is dismissed.

Signed August 31, 2017.

BY THE COURT

_____
District Judge David Nuffer

---

[151] *Id.* ¶ 9.

[152] *See infra* notes 82–85 and accompanying discussion in the text.

[153] Defendant's Motion for Summary Judgment, docket no. 11, filed Aug. 15, 2016.

[154] Complaint, docket no. 2, filed June 3, 2016.